616 F.2d 1165
 Roland G. SERNA and Ronald G. Sturdevant,
Plaintiffs-Appellants, and Cross-Appellees,
v.
A. C. (Chon) MANZANO, Individually and as Sheriff of Grant
County, New Mexico, Defendant-Appellee, and Cross-Appellant.
 Nos. 78-1794, 78-1795.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 27, 1979.
Decided Feb. 25, 1980.
 
 Peter A. Keys, Silver City, N. M., for plaintiffs-appellants and cross-appellees.
 Stephen M. Williams of Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, N. M. (J. Duke Thornton of Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, N. M., with him on brief), for defendant-appellee and cross-appellant.
 Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Roland Serna and Ronald Sturdevant, deputies in the office of the Sheriff for Grant County, New Mexico, were discharged on December 5, 1977, by A. C. (Chon) Manzano, the Sheriff of Grant County. Serna and Sturdevant later brought a civil rights suit against Manzano under 42 U.S.C. § 1983, alleging that their discharge was in retaliation for the exercise of their First and Fourteenth Amendment rights. By answer, Manzano alleged that he had discharged the two deputies in good faith and "in a reasonable manner given the information and circumstances existing at the time."
 
 
 2
 Trial of this case was to the court, sitting without a jury. The trial court found for the defendant, Manzano, and entered judgment in favor of him. In No. 78-1794, Serna and Sturdevant appeal the denial of their claim.
 
 
 3
 In its judgment the trial court decreed that each party should bear his own costs. In No. 78-1795 Manzano appeals that part of the trial court's judgment, contending that the trial court erred in not awarding him court costs.
 
 
 4
 As indicated, Serna and Sturdevant were serving as deputies, under Manzano, in the sheriff's office for Grant County. Manzano, Serna and Sturdevant were all Democrats. Sturdevant determined to switch his party affiliation to Republican, and to run for Sheriff at the next election. Sturdevant advised Manzano of his intention. Initially, Manzano was not particularly concerned over the possibility that he might be opposed in the next general election by his own deputy.
 
 
 5
 While attending a meeting in Albuquerque, Sturdevant had a telephone conversation with Sheriff Manzano in which the latter asked for Sturdevant's resignation. It appears that Manzano had just learned that Serna was going to act as Sturdevant's campaign manager, and that fact precipitated his request that Sturdevant resign. Sturdevant declined to resign, and indicated that he preferred a face-to-face discussion of the entire matter.
 
 
 6
 Sturdevant and Serna determined to use concealed tape recorders in all subsequent dealings with Sheriff Manzano and others in the sheriff's office. Neither Sturdevant nor Serna resigned. However, their evidence showed that each was demoted and in time discharged. Manzano's evidence showed that at about this time Sturdevant "went public" with his quarrel with Sheriff Manzano. Defense evidence also showed that Sturdevant and Serna made surreptitious tape recordings of their conversations with Sheriff Manzano and others in the office in an apparent effort to acquire information that could be used in the forthcoming political campaign. In time it became known by sheriff's office personnel that Sturdevant and Serna were recording all of their conversations. The knowledge that they were being recorded, it was said, created an atmosphere of tension, distrust and suspicion within the office. Before discharging his two deputies, Manzano had been advised by others in the office that he should discharge Sturdevant and Serna because of the turmoil they were fomenting there. Sheriff Manzano next conferred with the local district attorney concerning his authority to discharge a deputy sheriff. In this general setting, Sheriff Manzano discharged both Sturdevant and Serna.
 
 
 7
 As indicated, this was a trial to the court. The trial judge applied the rule of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) which calls for a "balancing" between the right of a public employee to freely comment, believe and associate in matters of public interest and concern, and the competing interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees. The trial judge found that the activities of Sturdevant and Serna caused animosities and disruption to develop within the sheriff's office, to the end that an air of suspicion and distrust prevailed which impaired the efficiency of the office. It was on this basis that the trial court denied the claims of both Sturdevant and Serna and found in favor of Sheriff Manzano.
 
 
 8
 Under local New Mexico statute it would appear that in the absence of a county merit system, sheriffs in all counties of the state have the power to appoint deputies, "who shall remain in office at the pleasure of such sheriffs."* N.Mex.Stat.Ann.1953, § 15-40-9. However, it is agreed that Sheriff Manzano did not have unbridled power to discharge deputies and that he may not do so in retaliation for the exercise by a deputy of his right to free speech.
 
 
 9
 In Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) the Supreme Court held that the practice of patronage dismissals violates the First and Fourteenth Amendments. However, in Elrod the Supreme Court in a plurality opinion went on to hold that although the practice of patronage dismissals clearly infringes on First Amendment interests, "our inquiry is not at end, for the prohibition on encroachment of First Amendment protections is not an absolute." In this regard, the Supreme Court observed that restraints on First Amendment interests are permitted for "appropriate reasons." In the instant case the trial court found in effect that there were "appropriate reasons" for the actions of Sheriff Manzano. Such finding is not clearly erroneous and on appeal must be accepted by us.
 
 
 10
 As indicated, the trial judge in his resolution of the matter relied on Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Pickering, a school teacher, sent a letter to the local newspaper which was critical of the Board of Education's proposed tax increase. The letter was published. Pickering was later discharged by the Board on the ground that the letter was detrimental to the efficient operation of the school district. Illinois courts upheld the discharge on the ground that the Board's determination was supported by substantial evidence. On appeal, the Supreme Court reversed. As mentioned above, the Supreme Court held that the interest of a teacher, as a citizen, to comment upon a public issue had to be balanced against the competing interest of the State, as an employer, to promote efficiency of the public services it performs through its employees. In this latter connection the Supreme Court was of the view that there was no evidence whatsoever that the statements made by Pickering in his letter to the editor, whether such statements were substantially correct or negligently incorrect, fomented such controversy and discord within the school district as would impair the efficiency of its operation. Such is in contrast to the instant case, where the trial court found that the actions of Serna and Sturdevant were disruptive and interfered with the efficient operation of the Sheriff's office. As indicated, there is evidence to support this finding of the trial court. We are disinclined to disturb the "balancing" by the trial court of the First Amendment interests of Serna and Sturdevant against the competing interest of the State to have an efficiently run sheriff's office free from dissension, distrust and continuing discord.
 
 
 11
 We should note that the record, in our view, lends itself to the conclusion that the discharge of Serna and Sturdevant was not the result of First Amendment activities, but was precipitated by the clandestine use of a tape recorder. However, we dispose of this controversy on the basis that it has been presented to us, namely, that the discharge of Serna and Sturdevant was caused, at least in part, by their First Amendment activities.
 
 
 12
 By cross-appeal (No. 78-1795), Manzano seeks review of that part of the judgment which disallowed his costs. As indicated at the outset of this opinion, the trial court decreed that each party would bear his own costs. No reason was given for not awarding Manzano his costs. Fed.R.Civ.P. 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." (Emphasis added.) 28 U.S.C. § 1920 pertains to the taxing of costs, and is permissive in nature. We have held that the taxing of costs, except as otherwise provided by statute, rests largely in the sound discretion of the trial court, and that its determination of the matter will not be overturned on appeal unless there has been an abuse of that discretion. Euler v. Waller, 295 F.2d 765 (10th Cir. 1961).
 
 
 13
 The apparent intendment of Rule 54(d) is that the prevailing party is presumptively entitled to costs, and that it is incumbent on the losing party to overcome such presumption, since the denial of costs is in the nature of a penalty. Accordingly, when a trial court refuses to award costs to the prevailing party, it should state its reasons for such disallowance. Unless an appellate court knows why a trial court refused to award costs to the prevailing party, it has no real basis upon which to judge whether the trial court acted within the proper confines of its discretion. Walters v. Roadway Exp., Inc., 557 F.2d 521 (5th Cir. 1977). That part of the judgment which decrees that each party shall bear his own costs is reversed, and this matter only is remanded to the trial court with directions that, after hearing, the trial court, if it still be inclined to deny Manzano his costs, shall state its reasons for disallowing costs to the prevailing party. The judgment is otherwise affirmed.
 
 
 14
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Grant County had no merit system in effect at this time