John SIMMONS, Plaintiff,

v.

Warren STANTON, Sheriff of Oceana
County, State of Michigan,
Defendant.

No. G76–194 CA6.

United States District Court,
W. D. Michigan, S. D.

Oct. 8, 1980.

Vernon D. Kortering, Muskegon, Mich., for plaintiff.

Clifford W. Prince, Shelby, Mich., for defendant.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

The plaintiff, John Simmons, was employed as an undersheriff in the Oceana County Sheriff's Department for six and one–half years before his discharge on October 16, 1975. The defendant, Warren Stanton, was sheriff of Oceana County at the time of plaintiff's discharge. Plaintiff was discharged upon *informing defendant that he was considering the possibility of running for the office of sheriff, on the Democratic ticket, against the defendant in the 1976 general election.*

Thereafter, plaintiff commenced this action under 42 U.S.C. § 1983, alleging that *his discharge was in retaliation for the exercise of rights protected by the First and Fourteenth Amendment guarantees of freedom of expression and association.* In addition, he claims that his discharge without a hearing violated his Fourteenth Amendment due process rights.

The trial in this case was to the court without a jury. For the reasons set forth below, the court finds the defendant's discharge of the plaintiff was in violation of his First and Fourteenth Amendment rights and a judgment for damages for the plaintiff shall be entered accordingly.

## FACTS

On April 21, 1969, plaintiff was appointed deputy sheriff in the Oceana County Sheriff's Department and served in that capacity until his appointment as undersheriff on May 1, 1975. He served as undersheriff until his discharge by defendant on October 16, 1975. The defendant Warren Stanton was the elected sheriff of Oceana County at the time of plaintiff's discharge.

The plaintiff admits that in the summer of 1975 he considered running on the Democratic ticket against the defendant in the general election of November 1976, and further discussed the possibility of his candidacy privately with various individuals. Upon hearing rumors of plaintiff's possible candidacy, defendant called plaintiff into his office on October 15, 1975, to discuss the matter with him. In response to questions by the defendant, plaintiff acknowledged

that he was considering running for the office of sheriff in the next year's general election.[1] At that time, defendant asked plaintiff to resign from his position within the Department. Plaintiff refused. The following day plaintiff received a letter from the defendant informing him of his discharge.[2]

In August of 1976, plaintiff ran unopposed in the primary election for the office of sheriff on the Democratic Party ticket. In the general election held on November 2, 1976, plaintiff successfully defeated defendant Sheriff Stanton and took office as sheriff of Oceana County on January 1, 1977, an office which he still holds.

## I. FIRST AMENDMENT ISSUES

The plaintiff maintains that his discharge under these circumstances violated his First and Fourteenth Amendment rights of freedom of expression and political association. The issue presented is whether the First and Fourteenth Amendments protect the right of a public employee to run for local public office or whether, as a condition of employment, a public employee may be required to refrain from such active political activity.

In the case of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court declared unconstitutional the political patronage practices of the Cook County government in democratic party machine, on First Amendment grounds.

The Court held that the discharge of public employees solely because of their partisan affiliation or non–affiliation infringes constitutionally–protected rights to freedom of expression and association. Similarly, the discharge of the plaintiff for announcing either his intentions or his consideration of the possibility of running for office against the sheriff of Oceana County, violated his First and Fourteenth Amendment rights. *See also, Pickering v. Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Serna v. Manzano*, 616 F.2d 1165 (10th Cir. February 25, 1980).[3]

The inquiry of the court does not stop at having established that plaintiff was exercising a protected First Amendment right. The Supreme Court has indicated that restraints on First Amendment interests of public employees are permitted under appropriate and limited circumstances. In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 811 (1968), the Court established a "balancing" test that calls for weighing of the right of the public employee to freely express opinions and associate in matters of public concern with the competing interests of the state, as an employer, in maintaining and promoting the efficiency of the public services it performs through its employees. *See, Pickering*, at 568, 88 S.Ct. at 1734. This is the appropriate test for the court to apply to the facts of this case.

1. There is some dispute between the parties whether Simmons was "considering the possibility" of running for the office of Sheriff in the next general election or whether he had formed an "intention to run" as a candidate in the election at the time of his discharge. The record indicates that the plaintiff had not yet firmly decided whether to run for the office. (*See* discussion *infra*, p. 938 of this opinion.)

   In any event, the distinction is not critical to the analysis or resolution of the issues of the case.

2. On October 16, 1975, the plaintiff received the following letter, signed by the defendant:

   "This is to notify you that your appointment as Undersheriff is hereby terminated as of October 16, 1975. Dated October 16, 1975."

3. In *Serna v. Manzano, supra*, two deputy sheriffs brought an action alleging that their discharge was in retaliation for exercise of First Amendment and Fourteenth Amendment rights. Deputy Sturdevant, a plaintiff, had decided to run for sheriff in the next general election against the incumbent sheriff, his employer. Serna was going to act as Sturdevant's campaign manager. The trial judge applied the *Pickering* "balancing test" and found that the actions of Serna and Sturdevant in connection with the race for public office were "disruptive and interfered with the efficient operation of the sheriff's office" and therefore justified their discharge. The Tenth Circuit Court of Appeals affirmed the action of the trial judge, but acknowledged that the defendant sheriff did not have unbridled power to discharge the plaintiffs in retaliation for the exercise of their rights to freedom of expression, 616 F.2d, at 1167.

In *Pickering v. Board of Education, supra,* a school teacher sent a letter to the local newspaper which was critical of the Board of Education's proposed tax increase and its past allocation of resources between educational and athletic programs. The letter was published. After a hearing by the board, Pickering was discharged, based on a determination that the letter had been detrimental to the efficient operation and administration of the school district. The Illinois Supreme Court upheld the discharge solely on the grounds that substantial evidence was introduced to support a finding that the publication of the letter was detrimental to the interests of the schools. The Supreme Court reversed. As indicated in the test set forth above, the Supreme Court held the First Amendment rights of the plaintiff had to be balanced against the competing interests of the employer. The Court concluded that the statement made by Pickering in his letter to the editor did not in fact create such controversy or discord within the school district that the ordinary operations of the school district were in any way adversely affected or impaired.

■ The defendant here argues in defense of his action in discharging the plaintiff that the provisions of M.C.L.A. § 51.70 and § 51.71 create an unrestricted right in the sheriff to discharge a deputy sheriff and/or an undersheriff from his public employment, at the pleasure of the sheriff. The statutes provide:

"Each sheriff may appoint 1 or more Deputy Sheriffs at his pleasure, and may revoke such appointment at any time . . ." (§ 51.70)

"The sheriff of each county shall . . . appoint some proper person undersheriff of the same county, who shall also be a general deputy, to hold during the pleasure of such Sheriff . . ." (§ 51.71)

However broad and unbridled the discretion of the sheriff may be in the exercise of his power to discharge under the above statutes, he may not do so in retaliation for the exercise by an employee of his right to free speech. *See, Pickering, supra,* and *Serna v. Manzano, supra.*

In addition, the defendant argues in defense of his action that the continued employment of the plaintiff in the Sheriff's Department, under the circumstances, would have created turmoil and morale problems within the Department. It is the defendant's testimony that he told the plaintiff in their October 15, conversation that he anticipated morale problems within the Department if the plaintiff refused to resign. However, on cross–examination, Sheriff Stanton admitted that the rumors of plaintiff's intention had not yet created any morale or other problems within the office at the time he requested plaintiff's resignation. At no time did the defendant discuss with the plaintiff any precautionary actions that either plaintiff or defendant might take to prevent deterioration of morale within the office. Stanton's apprehensions in anticipation of morale problems within the Department do not establish a sufficient justification for the restraint imposed upon the plaintiff's exercise of his First Amendment rights.

■ In analyzing the facts presented in *Pickering,* the court looked to several factors to determine the nature and extent of defendant–employer's interests that might justify restraint on the First Amendment rights of employees: (1) whether public criticism had been directed toward an individual with whom the employee would normally be in contact in the course of his daily work; (2) whether the ability to maintain discipline or harmony among co–workers had been affected; (3) whether personal loyalty and confidence between the employer and the subordinate employee was necessary to their proper functioning; and (4) whether there had been harm or adverse impact on the ordinary operations of the work in the public services performed.

The same factors are appropriate here for the court to use in balancing the First Amendment interests of Simmons in pursuing elected local office, against the competing interests of Sheriff Stanton and the Department in maintaining an efficiently run Sheriff's Department free of dissension, discord or serious morale problems.

*(1) Public Criticism; (2) Discipline Problems and Harmony Among Co–workers:*

There is no indication that Simmons had directed criticism either publicly or privately against Stanton in exploring the possibilities of running for elective office against him.

Neither is there any indication that the plaintiff's expression of interest in running for local office had created any discipline problems or lack of harmony among his co–workers. Sheriff Stanton had discharged Simmons based on his speculation that Simmons' continued employment would create disharmony or morale problems among the staff members within the Department. No evidence was offered to establish that in October of 1975 it was generally known among the staff that Simmons was entertaining the thought of or had formed the intentions of running for sheriff in the next general election. If, in fact, morale problems or discord or turmoil had developed within the Oceana County Sheriff's Department as a result of Simmons' candidacy different considerations would be involved in this case.[4] The fact is that no such discord had developed. The record does not show any facts to support a conclusion that Sheriff Stanton's apprehensions of turmoil or effect on staff morale resulting from plaintiff's candidacy were anything more than a premature, unsubstantiated concern on the part of the Sheriff.

*(3) Need for Personal Loyalty and Confidence:*

Undoubtedly, a special need exists for confidence and personal loyalty between a sheriff and his immediate undersheriff in order to maintain an efficient working rela-

tionship. That concern, if it was held by Sheriff Stanton, could have been addressed and accommodated by some action short of discharge of his undersheriff. For example, it would have been reasonable for the defendant to move the plaintiff into a position of deputy within the Department at the time he indicated his intentions to run against the defendant. Stanton certainly could have then selected from among the other six or seven deputies, a person to serve in the position of undersheriff. If that accommodation had been made, there is no reason to believe that plaintiff would have or should have suffered a reduction in his salary.

*(4) Harm or Adverse Impact on the Operations of the Sheriff's Department:*

■ Likewise no proofs were introduced to establish that the plaintiff's expression of intention to run in the 1976 general election for the office of sheriff had either impeded his performance of his work or interfered with or had an adverse effect upon the regular operations of the Department. The defendant had discharged the plaintiff more than a year before the general election. No opportunity was given by defendant to see what influence, if any, plaintiff's candidacy might have on the Department.

It is reasonable to presume that at some point in a race for local public office which obviously raises issues of public concern, a candidate would spend some time actively running for that office. Because of Simmons' premature discharge in this case, it is impossible for the court to determine when active campaigning for the local political office would have warranted a limited, involuntary leave of absence for the plaintiff. For the purpose of calculating damages in

---

4. Likewise, if there had been a breach of trust between Sheriff Stanton and Undersheriff Simmons "significantly different considerations" would be involved in this case. In footnote 3 of the *Pickering* opinion, 391 U.S., at 570, 88 S.Ct. at 1735, the Court said:

"... positions in public employment in which the relationship between superior and subordinate is of such a personal and inti-

mate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also by imagined. We intimate no views as to how we would resolve any specific instances of such situations, but merely note that significantly different considerations would be involved in such cases."

this suit, I find it reasonable to assume that Sheriff Stanton could have required Undersheriff Simmons to take an involuntary leave of absence for thirty days prior to the general election in which he ran for Sheriff, which was held on November 2, 1976.

■ In balancing the competing claims of First Amendment protection of the plaintiff's right to announce his candidacy and run for local public office against his employer, against the competing interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employers, under the *Pickering* test, I conclude that the defendant acted prematurely and wrongfully in violation of the plaintiff's First and Fourteenth Amendment rights in discharging him on October 16, 1975. No evidence exists in the record to support a conclusion that the conduct of the plaintiff before his discharge included any criticism of his employer. Nor did his conduct in any way adversely affect the ability of the employer to maintain discipline or harmony among his staff. And finally nothing undertaken by plaintiff undermined in any way personal loyalty between the plaintiff and the Sheriff or in any way jeopardized his functioning or harmed the Department in its orderly operation. Absent any finding of adverse harm to the interests of the employer, the plaintiff could not have been compelled to relinquish the exercise of his First Amendment rights as a condition to his continued employment in the Sheriff's Department. The fact that defendant may have thought in good faith that plaintiff's plans to run against him might create morale or discipline problems is not a sufficient reason for plaintiff's discharge.

## II.  THE HATCH ACT

■ Under the provisions of the Hatch Act, 5 U.S.C. § 1501, *et seq.*, certain local public employees whose "principal employment is in connection with an activity which is financed in whole or in part by loans or grants by the United States or a federal agency," are prohibited from being a candidate for elected office.[5]  The defendant raises the Hatch Act in his defense as a legitimate basis for his termination of plaintiff's employment. I cannot agree, based on the record, that the application of the Hatch Act required the termination of plaintiff's employment, on October 16, 1975.

The evidence in the record does not support a conclusion that Simmons was principally employed in or had responsibility for activities within the Department that were financed by federal loans or grants within the meaning of the Hatch Act. The parties have stipulated that federal funds awarded to the Oceana County Sheriff's Department for use in the calendar year of 1975 included three grants in the total amount of $111,219.79.

**5.** The portions of the Hatch Act, 5 U.S.C. § 1501 *et seq.*, which are relevant to the defense raised by the defendant provide as follows:

"§ 1501. Definitions. For the purpose of this chapter . . .
(4) 'State or local officer or employee' means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency . . ."
"§ 1502. Influencing elections; taking part in political campaigns; prohibitions; exceptions
(a) A State or local officer or employee may not
(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office;

(2) directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, or contribute anything of value to a party, committee, organization, agency, or person for political purposes; or
(3) be a candidate for elective office.
(b) A State or local officer or employee retains the right to vote as he chooses and to express his opinions on political subjects and candidates.
(c) Subsection (a)(3) of this section does not apply to–
(1) the Governor or Lieutenant Governor of a State or an individual authorized by law to act as Governor;
(2) the mayor of a city;
(3) a duly elected head of an executive department of a State or municipality who is not classified under a State or municipal merit or civil-service system; or
(4) an individual holding elective office."

Federal funds contributions for 1975:

| | |
|---|---|
| Law Enforcement Assistance Administration (LEAA) Grant | $16,240.69 |
| Office of Criminal Justice Grant | 81,822.50 |
| Comprehensive Employment and Training Act (CETA) Grant | 13,156.60 |
| Total: | $111,219.79 |

The LEAA Grant paid the salary and fringe benefits of a detective within the Department. The CETA Grant was used to hire and pay salaries and fringe benefits for two new deputy sheriffs. The Office of Criminal Justice Grant was used to purchase a county–wide radio communications system. There is no indication that any of these federal funds were used to contribute to the plaintiff's salary directly or to activities which constituted his principal employment responsibilities within the Sheriff's Department. Consequently, the Hatch Act does not apply to plaintiff's employment situation because he is not a local employee under the provisions of Section 1501(4) of the Act.

Assuming, for purposes of argument, that the requirements of the existence of federal funds within the Department and within the sphere of plaintiff's principal employment, under Section 1501(4) of the Act had been satisfied, Simmons was not a "candidate for elective office" under Section 1502(3) of the Act on October 16, 1975. From the record it appears that, on or before that date, he either had formed an intention to become a candidate for local public elective office, or at most was seriously considering the possibility. However, the distinction is not material to the issues presented by the case. In either event, he had not in fact become a candidate and the Hatch Act, therefore, did not mandate his resignation or discharge from public employment on October 16, 1975.

On that date, Simmons had made no public announcement of his candidacy. The general election was to be held more than a year later, on November 2, 1976. He had not circulated or filed nominating petitions and none were required to be filed until June of 1976, for the August primary. The objective indications of a candidacy by the plaintiff for public office were simply not present in October of 1975.

## III. DUE PROCESS

The plaintiff, in addition, claims in his complaint that Sheriff Stanton, acting in his official capacity, in failing to provide Simmons a hearing on the question of his discharge, violated his procedural due process rights under the Fourteenth Amendment. The Supreme Court decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) establish that before a person is deprived of protected interests he must be afforded an opportunity for a hearing, except that under exceptional circumstances a hearing may be postponed until after the deprivation. The resolution of this due process question, given the facts of this case, turns on whether the plaintiff had an entitlement to continued employment and thereby a protected property interest in his employment. *Board of Regents v. Roth, supra*, at 577, 92 S.Ct. at 2709. The court having resolved the substantive First Amendment issues in plaintiff's favor, no need exists to proceed to resolve the issues raised in plaintiff's due process claim.

## IV. DAMAGES

The parties have stipulated to damages suffered by the plaintiff as a result of his discharge, including loss of wages and fringe benefits, mitigated by plaintiff's collection of unemployment and earnings from part–time employment in the Hesperia Police Department in 1975 and 1976.

The court finds that the plaintiff is entitled to judgment against defendant Sheriff Stanton, acting in his official capac-

ity, in the amount of $2,985.50.[6] In addition, plaintiff shall have 14½ months of seniority, which he lost as a result of his discharge, restored to him within the Oceana County Sheriff's Department. The damages are calculated based on net wage loss for the period of October 16, 1975, through December 31, 1976, with the exclusion of a 30-day period before the November, 1976, election, which the court finds would have been a reasonable period for a required, involuntary leave of absence for the plaintiff. Fringe benefits, including hospital insurance, life insurance, and retirement benefits for the entire period, including the period of mandatory leave, are calculated in the damage figure.

This opinion constitutes the findings of fact and conclusions of law of the court as required by Rule 52(a) of the Federal Rules of Civil Procedure. A judgment against the defendant awarding damages to the plaintiff in the amount determined by the court in this opinion shall be issued accompanying this opinion.

. IT IS SO ORDERED.

6. The plaintiff's damages are calculated as follows:

| | |
|---|---|
| Wage loss with offset * | $1,556.83 |
| Hospitalization insurance | 884.45 |
| Life insurance | 29.82 |
| Retirement | 514.40 |
| Total damages with offset for actual earnings | $2,985.50 |

* Wage loss is calculated for the period from 10/16/75 through 12/31/76 with the exception of a 30-day period immediately before the general election of November of 1976, which the court has found would have been a reasonable period for a mandatory temporary leave.

Damages against the defendant, acting in his official capacity, are appropriate under the reasoning of the Supreme Court in its recent opinion in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).