**David A. ARMSTRONG, Plaintiff,**

v.

**CITY OF ARNETT, et al., Defendants.**

**No. CIV 87–1746–R.**

United States District Court,
W.D. Oklahoma.

Feb. 7, 1989.

Steven M. Angel, Hughes & Nelson, Oklahoma City, Okl., for plaintiff.

Joe L. Jackson, Wright, Jackson & Jackson, Arnett, Okl., Edward D. Hasbrook and Jim T. Priest, Margaret McMorrow–Love, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are the motions for summary judgment of Defendants City of Arnett ("Arnett"), Frank Freeman, J.C. Dishen, and Jim Spencer. Plaintiff has responded in opposition to these motions.

This case arises from Arnett's termination of Plaintiff's employment as police chief of Arnett. Defendants Dishen, Freeman, and Spencer are members of the Board of Trustees ("Board") who voted in favor of Plaintiff's termination.[1] In this action Plaintiff asserts that his termination was in violation of (1) his First Amendment rights of free speech and political activity, (2) his substantive due process rights, (3) his Fourteenth Amendment right of procedural due process and, (4) in breach of an implied contract of continued employment.

A district court appropriately grants a motion for summary judgment when the non-moving party fails to show a genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the party moving for summary judgment makes a showing that there is no evidence to establish an essential ele-

---

1. The Board of Trustees ("Board") is the governing body for Arnett. There are five Trustees on the Board. Defendants Dishen and Spencer were elected to the Board in February 1987. Mr. Freeman held a Trusteeship as a result of an earlier election.

ment of the claim, the burden then shifts to the party opposing the motion. That party must respond with evidence or citations to the record that dispute the motion for summary judgment.

> McKibben v. Chubb, 840 F.2d 1525, 1532 (10th Cir.1988).

This Court must then consider the facts in the light most favorable to the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## PLAINTIFF'S FIRST AMENDMENT CLAIMS

Plaintiff contends that Defendants violated both his First Amendment right of freedom of political association and his right of free speech in discharging him from employment. Initially, Plaintiff alleges that his termination was in retaliation for his political support for opposition candidates for the Trustee positions to which Defendants Dishen and Spencer were elected in 1987. Second, Plaintiff claims that his termination was also in response to his exercise of his right of free speech in private conversations with the individual Defendant Trustees. In these conversations, Plaintiff and Defendants Freeman, Dishen, and Spencer allegedly discussed law enforcement policies and operations of the Arnett police department.

To establish that his termination was in violation of his First Amendment rights, Plaintiff must demonstrate that "(1) the speech [or activity] was constitutionally protected and (2) the speech [or activity] was a substantial motivating factor in the state's detrimental action." *Wren v. Spurlock*, 798 F.2d 1313, 1317 (10th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987), *citing*, *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Moreover, because Plaintiff was a public employee:

> If the speech [or activity] is of public concern, the court must balance the interests of the public employee, as a citizen, in commenting upon matters of public concern against the interests of the public entity, as an employer, in promoting the efficiency of the public service it performs.
>
> *Conaway v. Smith*, 853 F.2d 789, 795 (10th Cir.1988) (citation omitted).
>
> The first element, including both the public concern and balancing issues, raises questions of law.... The second element of the Plaintiff's case, whether the state's action was motivated by the employee's conduct, raises a question of fact for the jury.
>
> *Id.* at 796 n. 8 (citations omitted).

It is beyond cavil that Plaintiff's right to participate in political activity and freedom of political association is protected by the First Amendment. Plaintiff's alleged support for the incumbent Trustees in the 1987 election clearly falls within the ambit of the First Amendment.[2] *See Joyner v. Lancaster*, 815 F.2d 20 (4th Cir.), *cert. denied* —— U.S. ——, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987).

Next, the Court considers the issue of whether Plaintiff's interests in freedom of political association outweigh Defendants' interests which they sought to protect. *E.g., Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The public employee's First Amendment rights must be protected "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance of the employee." *Wren*, 798 F.2d at 1318 (citations omitted).

Defendants contend that even assuming Plaintiff's entitlement to First Amendment protection the Board was justified in terminating Plaintiff. Essentially, Defendants allege that Plaintiff's termination was necessary to fulfill the mandate of the elector-

---

**2.** The Court notes that Defendants dispute Plaintiff's claim that he was politically affiliated or associated with the incumbent Trustees opposed by Defendants Dishen and Spencer in the 1987 Board elections. However, Plaintiff's depositions excerpts allege such association and, be-cause this Court must construe all facts and reasonable inference therefrom in Plaintiff's favor, the Court will assume for the resolution of Defendants' summary judgment motions that Plaintiff was politically affiliated with the incumbent Trustees.

ate as evidenced by the election of Defendants Dishen and Spencer.

The seminal case on discharge of a public employee because of his political affiliation is *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1975). In *Elrod,* the Court stated:

> [I]f conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.

*Id.* at 363, 96 S.Ct. at 2684.

A plurality of the Court affirmed the issuance of a preliminary injunction to prevent the Sheriff of Cook County, Illinois, a newly elected Democrat, from removing the respondent Republicans employed in the Sheriff's department. The Court found political affiliation was not an appropriate requirement for continued employment because respondents did not occupy policy-making positions.

The Court subsequently refined and altered the "policy-making analysis" in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Branti,* the Court affirmed enjoining the head of the Public Defenders Office in Rockland County, New York, a newly appointed Democrat, from dismissing two assistant public defenders who were Republicans.

> [T]he ultimate inquiry is not whether the label 'policy-maker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.* at 518, 100 S.Ct. at 1294.

In *Dickeson v. Quarberg,* 844 F.2d 1435, 1442 (10th Cir.1988), the court, following an exhaustive analysis of *Elrod* and *Branti,* determined:

The critical question whether a position is one where 'party affiliation is an appropriate requirement for the effective performance of the public office involved,' *Branti,* 445 U.S. at 519 [100 S.Ct. at 1295] can be answered best by analyzing the nature of the employee's duties and responsibilities. *See Elrod,* 427 U.S. at 367–68 [96 S.Ct. at 2686–87]. In close cases, doubt should be resolved in favor of the public employee subject to the dismissal.

The court concluded that dismissal was not justified on the grounds of political affiliation in that case because the discharged employees' duties were solely administrative. Thus, initially this Court must focus upon Plaintiff's duties and responsibilities as Arnett police chief.

An Arnett town ordinance empowers the police chief (1) to appoint and remove police officers subject to confirmation by the Board, (2) to supervise and control the police department subject to the Board's supervision and control and, (3) grants all of the powers and liabilities of a sheriff in executing the orders of the Board and town ordinances as provided by the Oklahoma Statutes. Def. Arnett Br. Appendix C.[3] Section 516 of title 19, Oklahoma statutes, provides, in part:

> It shall be the duty of the sheriff ... to keep and preserve the peace ... to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose and for the service of process in civil and criminal cases and in apprehending or securing any person for felony or breach of the peace, they and every constable may call to their aid such person or persons of their county as they deem necessary.

In essence, the Arnett ordinance and the Oklahoma statute referenced therein establish a system where the police chief is subordinate to and implements the policies promulgated by the Board. The town ordinance allows the Board to supervise and

---

**3.** "Def. Arnett Br. ____." refers to the brief in support of the motion for summary judgment of Defendant Arnett.

change all decisions of the police chief, including personnel decisions. This evaluation is further substantiated by the deposition excerpts accompanying the parties' briefs. In his deposition, Plaintiff alleges that he was terminated because of his refusal to follow the law enforcement policies suggested by the newly elected Trustees, Dishen and Spencer, and continued adherence to the law enforcement policies of the prior Board. Thus, Plaintiff's role as Arnett police chief was as an implementer of the law enforcement policies established by the Board. Therefore, the Court must determine whether political affiliation or philosophy is an appropriate prerequisite for the position of Arnett police chief, when the duties of the police chief are primarily implementation of policies established by the Board and administration of the police department, rather than as a formulator of law enforcement policies.

In *Serna v. Manzano,* 616 F.2d 1165, 1167 (10th Cir.1980), the court declined "to disturb the 'balancing' by the trial court of the First Amendment interests of Serna and Sturdevant against the competing interest of the State to have an efficiently run sheriff's office free from dissention, distrust and continuing discord." In that case, appellants had been discharged from their positions as deputy sheriffs because Mr. Sturdevant with Mr. Serna's support, opposed the respondent, Sheriff Manzano, in the general election for county sheriff. The court affirmed the district court's decision that plaintiffs' actions were so disruptive of the efficient functioning of the police department that plaintiffs' discharges, even though based upon their exercise of First Amendment rights, were justified.

In the present case, Plaintiff freely professes his support for the incumbent Trustees in the 1987 election. Moreover, examination of the deposition excerpts reveals that Plaintiff's retention as police chief and operation of the Arnett police department, were the primary, if not sole, issues in the 1987 Board election. Def. Arnett Br. Exhibit H. Miller Deposition 40; Def. Reply

Br. Anding Deposition 49, 54, Denson Deposition 22–23, Hodges Deposition 36.[4] This presents a situation similar to *Serna.* Here, Plaintiff complains that his discharge was in retaliation for his support of opposition political candidates just as Messrs. Serna and Sturdevant contended that their discharges were caused by their opposition to Sheriff Manzano in the general election. In addition, Plaintiff, similarly to Messrs. Serna and Sturdevant, voluntarily chose to inject himself into the political fray. Thus, Plaintiff by his active opposition to Defendants Dishen and Spencer created a situation that, when Defendants Dishen and Spencer were elected, imperiled the working relationship between the Board and Plaintiff. Arnett has a compelling interest in an effective, efficient police department. To effectuate that interest the Board is entitled to have a police chief who will carry out and enforce the law enforcement policies promulgated by it. Plaintiff because of his support for opposition candidates clearly endangered, if not made impossible, the close working relationship necessary between the Board and the police chief to serve Arnett's interest. Unlike the employees discharged in *Branti* and *Elrod,* Plaintiff was not a passive observer, rather Plaintiff actively opposed Defendants Dishen and Spencer. Therefore, the Court concludes that Arnett's interest in a police department free from dissension with the Board outweighs Plaintiff's interest in unrestrained exercise of his First Amendment right of freedom of political association.

Regarding Plaintiff's second First Amendment claim, that he was terminated due to his exercise of his right of free speech in private conversations with the individual defendant Trustees, Plaintiff must demonstrate that the subject matter of the speech dealt with a matter of public concern. *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[W]hether an employee's speech addresses a matter of public concern must be determined by the 'content, form, and con-

---

**4.** "Def. Reply Br. ____" refers to the reply brief in support of the summary judgment motion of Defendants.

text of a given statement, as revealed by the whole record.' " *Conaway,* 853 F.2d at 796, *quoting, Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. Defendants allege that these private conversations between Plaintiff and the Defendant Trustees did not deal with matters of public concern, rather, they concerned internal disputes regarding the operation of the Arnett police department.[5] As this Court has previously noted, the operation of the police department was causing a great deal of public concern—enough to make it the central issue of the 1987 Board elections. Because of the public controversy engendered by the operation of the Arnett police department, the Court has little difficulty in concluding that these private conversations dealt with matters of public concern, nor is Plaintiff's speech removed from the pale of First Amendment protection merely because it occurred in the context of private conversations. *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

The next issue is whether Arnett's interest "in promoting the efficiency of the public services it performs through its employees" outweighs Plaintiff's interest in unrestrained exercise of his right of free speech. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Moreover, as noted earlier the burden is on the employer to justify the restraint on the exercise of the First Amendment right. *Wren,* 798 F.2d at 1318.

Defendants contend that Plaintiff's termination was necessary because of the Board's "decision that they would no longer work with a department head in whom they had no confidence." Def. Arnett Br. 18. In performing the *Pickering* balancing test the Court must consider:

[W]hether the statement impairs discipline by superiors or ... has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operations of the enterprise.

    *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987).

In performing the balancing test, the Court will not consider the speech in a vacuum; "the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id.* 107 S.Ct. at 2898.

In *Koch v. City of Hutchinson,* 847 F.2d 1436, 1449 n. 20 (10th Cir.1988), the court recognized:

Private expression ... may in some situations bring additional factors to the *Pickering* calculus. When a governmental employee personally confronts his immediate supervisor, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.[6]

The court continued, implicitly recognizing a "heightened governmental interest in maintaining harmony among employees in the law enforcement context...." *Id.* at 1452 n. 22.

Application of the *Pickering* test in this case compels the Court to find that Arnett's interest in maintaining a close-working relationship between the Board (which established law enforcement policies) and the police chief (who implemented the established law enforcement policies) to insure effective law enforcement by the police department outweighs Plaintiff's inter-

---

**5.** Plaintiff and Defendants dispute the exact content of these private conversations. However, both parties agree that they concerned the operations of the Arnett police department and the law enforcement policies to be followed. We do not make a finding as to the exact content of these private conversations because, even if the content of these private conversations is as alleged by Defendants, we still conclude that the

conversations dealt with matters of public concern. *See* Def. Arnett Br. 9, 16.

**6.** Plaintiff's speech occurred in a private context during the interval between Defendants Dishen and Spencer and the Board meeting at which Plaintiff was terminated. The content of Plaintiff's speech dealt with law enforcement policies and operations of the Arnett police department.

est in unrestrained exercise of his right of free speech. Because the police chief carries out the policies established by the Board, it is obviously necessary that the Board employ a police chief who will loyally effectuate those policies. Defendants Dishen, Freeman, and Spencer voted to terminate Plaintiff because of their dispute regarding the operation of the Arnett police department, as evidenced by the July 14, 1987 letter from Arnett's counsel to Plaintiff's counsel. Pl. Br. Exhibit 7.[7] In this case, Plaintiff exercised his right of free speech in a confrontation with his superiors on the Board. The context of Plaintiff's exercise of his right of free speech, when considered in conjunction with the circumstances preceding the confrontations does not outweigh Arnett's interest in law enforcement policies as mandated by the electorate in the 1987 Board election. Defendants Spencer and Dishen were elected because of their opposition to the law enforcement policies of the prior Board. The implementation of the policies of the new Board through a police chief in whom the Board had confidence clearly outweighs Plaintiff's exercise of free speech to disagree with those policies.

Accordingly, the Court finds that Arnett's interest in employing a police chief who would carry out the law enforcement policies supported by the electorate, as evidenced by the elections to the town's governing body, outweighs Plaintiff's interest in unrestrained exercise of his right of political association through support of opposition candidates and unrestrained exercise of his right of free speech in support of opposition policies. Therefore, summary judgment on Plaintiff's First Amendment claims is appropriate.

### PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM

Plaintiff has alleged that his termination violated his substantive due process rights. "Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986), *citing, Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). Thus, to recover on a substantive due process claim Plaintiff must allege the violation of a fundamental right.

It is well established that there is no "constitutional right to continue public employment...." *Buckley v. Coyle Public School System,* 476 F.2d 92, 97 (10th Cir. 1983) (citations omitted). Therefore, Plaintiff had no fundamental right to continue in his employment as Arnett's police chief. Accordingly, Plaintiff's termination does not give rise to a substantive due process claim.

### PLAINTIFF'S PROCEDURAL DUE PROCESS AND IMPLIED CONTRACT CLAIMS

Defendants seek summary judgment on Plaintiff's claim that his discharge violated his Fourteenth Amendment right to procedural due process in his termination. Defendants allege (1) Plaintiff did not have a property interest in his continued employment as Arnett police chief and, (2) even assuming that Plaintiff had a property interest in his employment, Plaintiff was accorded procedural due process in his termination as required by the Fourteenth Amendment.

It is well established that "[p]rocedural due process requires a pretermination hearing where liberty or property interests protected by the Fourteenth Amendment are implicated." *Conaway,* 853 F.2d at 793, *citing, Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 567, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972). However, to establish a property interest in his continued employment, Plaintiff must demonstrate " 'a legitimate claim of entitlement' to continued employment." *Dickeson,* 844 F.2d at 1437 (citation omitted). Whether a legitimate claim of entitlement to continued employment exists or creates a property interest is a question of state law. *Bishop*

---

7. "Pl. Br. Exhibit ____" refers to Plaintiff's motion to file exhibits dated October 25, 1988, and filed concurrently with Plaintiff's response to the summary judgment motion of Defendants.

*v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Thus, Oklahoma law determines whether Plaintiff had a property interest in his employment as Arnett police chief.

Plaintiff alleges that he had an implied contract of employment with the Board that he could not be terminated without just cause. Plaintiff contends that this alleged implied contract created a property interest in his employment. Plaintiff also argues that his discharge breached that implied contract of employment because it was not based upon just cause. Thus, Plaintiff's claims of violation of his Fourteenth Amendment right to procedural due process and breach of an implied contract are inherently connected. To establish a property interest, Plaintiff must demonstrate the existence of an implied contract of continued employment. Therefore, this Court must determine whether under the evidence presented, when considered in the light most favorable to Plaintiff, an implied contract is established.

Plaintiff asserts three bases in support of his claim that an implied contract of continued employment existed: (1) the police employee personnel manual ("police manual"); (2) the Arnett town employees handbook ("Arnett handbook"); and (3) 11 Okla.Stat. § 50–123, which provides that a police department employee may not be discharged without just cause.

■ Initially the Court considers the issue of whether an implied contract of employment was created by the police manual. Plaintiff relies upon a section of the manual which provides that "no officer shall be terminated from this department other than for just cause." Pl.Br. Exhibit 2A p. 9. In *Hinson v. Cameron,* 742 P.2d 549, 555 (Okla.1987), the court recognized that an implied contract of employment could be created by an employer's policy manual and an employee's detrimental reliance upon that manual, *inter alia.*

In *Vinyard v. King,* 728 F.2d 428 (10th Cir.1985), the court held that an employee handbook which provided that an employee could only be terminated for cause created a property interest in continued employ-ment. The court relied upon *Hall v. O'Keefe,* 617 P.2d 196 (Okla.1980), in which, the Oklahoma Supreme Court reversed the issuance of a writ of mandamus ordering the reinstatement of the police chief and a lieutenant for the Broken Bow police department. The court found that 11 Okla. Stat. §§ 10–113 and 10–120, which limited the terminations of municipal employees to those necessary for "the good of the service" did not confer a property interest in continued employment. The court construed the phrase "for the good of the service" as too vague to create a property interest and only prohibited those personnel decisions "which are clearly arbitrary or capricious." *Hall,* 617 P.2d at 200. Therefore, respondents did not have a sufficient expectancy of continued employment to create a property interest. *See also Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.Ct.App.1976) (found a policy manual created an entitlement to severance pay absent termination for just cause).

If this Court were to look only to that portion of the police manual relied upon by Plaintiff, there would be little difficulty in finding that an implied contract of employment not to discharge Plaintiff without cause was created. However, the Court must examine all of the facts and circumstances surrounding Plaintiff's employment to determine whether an implied contract and, thereby a property interest, exists. *See, Vinyard,* 728 F.2d at 432. Defendants contend that Plaintiff had no property interest in his employment because an Arnett town ordinance provided that "the board of trustees may remove him [the police chief] at pleasure." Def. Arnett Br. Exhibit C. Defendants also rely upon 11 Okla.Stat. 12–106, which provides, in pertinent part, that a "board [of trustees] may ... remove ... designated town officers and employees as provided by law or ordinance...."

Most recently, in *Graham v. City of Okla. City,* 859 F.2d 142, 146 (10th Cir. 1988), the court recognized that "[t]aken alone, the personnel policy or employee manual might create a property interest."

However, the court concluded that a property interest was not created.

> Under Oklahoma law, where certain terms of employee dismissals are explicitly stated in the city charter, the city manager or other city officials are not authorized to alter or otherwise restrict those terms so as to legally bind the city. *Id.*

In *Graham,* the court affirmed a summary judgment in favor of the defendant that no property interest existed in the plaintiff police officer's continued employment.

The instant case differs from *Graham,* however, in one significant aspect. In *Graham,* the policy manual relied upon by the plaintiff to establish a property interest was approved by the city manager, who "was not authorized to legally bind the city to any other terms or reasons for dismissal." *Id.* In this case, the policy manual was approved by the Town Board. However the first page of the police manual states, in part, that "[a]t no time will an officer interpret this manual in any way contrary to the laws of the community, state, or nation." Pl. Br. Exhibit 2A p. 1. Thus, the police manual explicitly subordinated itself to the Arnett ordinance that made Plaintiff's employment as police chief terminable at the pleasure of the Board. The Court concludes that the Oklahoma Supreme Court would not find a property interest in continued employment or implied contract because the Arnett ordinance controls the police manual and, that ordinance creates only an employment at will relationship between the Arnett police chief and the Board. This is especially true, in this case, because Plaintiff actually prepared and submitted the police manual relied upon, to the Board for passage. Therefore, Plaintiff may not invoke the rule of *contra proferentem* to avoid application of the entire police manual in determining whether a property interest was created. Nor, may Plaintiff contend that any ambiguities in the manual should be interpreted in his favor. *See Langdon,* 569 P.2d at 528. The explicit subordination of the police manual to both the Arnett ordinances and Oklahoma statutes, both of which provide for Plaintiff's termination at the will of the Board, prevent the creation of an implied contract or sufficient expectancy in continued employment necessary for a property interest under Oklahoma law.

■ Nor does the Arnett handbook create an implied contract of employment. Plaintiff relies upon those portions of the handbook which provide that "[w]e [the Board] will avoid discharge except as a last resort" and "[w]e [the Board] will provide steady employment so far as practical." Pl. Br. Exhibit 1 p. 6. These statements are insufficiently definitive to provide Plaintiff with an expectancy of continued employment or implied contract. The Arnett handbook does not limit the reasons for which the Board may discharge Plaintiff, it merely requires that the discharge be a last resort. *See Hall, supra.*

■ The final basis relied upon by Plaintiff to establish an implied contract is 11 Okla.Stat. § 50–123. That statute is part of the framework establishing the Oklahoma Police Pension and Retirement Fund ("Fund"). However, to rely upon the Fund to establish a property interest Plaintiff must actually participate in the Fund. Plaintiff has presented no evidence that he contributed to the Fund or, that Arnett did so on his behalf. Indeed, at oral argument on these summary judgment motions, Plaintiff's counsel acknowledged that Plaintiff was not a participant in the Fund. Since Plaintiff was not a Fund participant, he may not rely upon 11 Okla.Stat. § 50–123, to create a property interest or implied contract in his continued employment. *Stroud v. City of Wayne,* Case No. 87–2211, slip op. at 4, (W.D.Okla. April 13, 1988).

Plaintiff asserts three bases for his claim that he had an implied contract for continued employment absent just cause for his termination and, thereby, a property interest in his continued employment as a police chief. None of these bases establish a property interest under Oklahoma law. The police manual is governed by state law and a town ordinance which make Plaintiff terminable at will; the Arnett handbook is

too vague to create an implied contract of employment; section 50–123 of title 11, Oklahoma Statutes, is inapplicable to Plaintiff's employment. Therefore, because Plaintiff did not have a property interest in his continued employment or an implied contract Plaintiff was not entitled to the procedural due process protections of the Fourteenth Amendment during his termination. In addition, inasmuch as no implied contract existed between Plaintiff and the Board, Plaintiff has no contractual cause of action.

## CONCLUSION

Accordingly, the Court grants the summary judgment motion of Defendant Arnett, which was joined in by the individual Defendants Frank Freeman, J.C. Dishen, and Jim Spencer. Because the Court grants summary judgment in favor of Defendants as a matter of law, we do not reach the issue of the affirmative defense of qualified immunity raised by Defendants Freeman, Dishen, and Spencer.

IT IS SO ORDERED.