In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-2008

BOARD OF EDUCATION OF OTTAWA TOWNSHIP
HIGH SCHOOL DISTRICT 140, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MARGARET SPELLINGS, Secretary of Education, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 655—**David H. Coar**, *Judge*.

ARGUED JANUARY 15, 2008—DECIDED FEBRUARY 11, 2008

Before EASTERBROOK, *Chief Judge*, and FLAUM and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Two school districts and
some parents believe that the No Child Left Behind Act,
20 U.S.C. §§ 6301–6578, conflicts with the Individuals
with Disabilities Education Act, 20 U.S.C. §§ 1401–82.
They asked the district court for a declaratory judgment
that the former's requirements must yield to the latter's.
The judge declined to reach the merits, however, ruling
instead that the plaintiffs lack standing because both
statutes establish voluntary programs, and the school

districts can solve any problem for themselves by turning down the federal money and escaping the obligations. 2007 U.S. Dist. LEXIS 24057 (N.D. Ill. Mar. 31, 2007).

That won't hold water, for several reasons. First, the decision to participate in these programs is made at the state rather than the local level. Second, several of the plaintiffs are parents, who lack any option about participation. Third, both of the federal statutes require jurisdictions to opt in or out for a year or more at a time. A school district may decline a subgrant from the state and thus avoid most obligations under the No Child Left Behind Act, see 20 U.S.C. §6311(b)(2)(A)(ii), but once a district takes the proffered grant it must comply with all of the program's requirements and correspondingly is entitled to object that a particular demand made in the program's name by the Secretary of Education and other officials is not actually authorized by federal law. A condition on a grant can cause concrete injury that establishes a "case or controversy" even if the condition could have been avoided by turning down the money earlier. The Supreme Court has addressed many disputes about the validity of conditions attached to federal grants without a single Justice suggesting that the Court was issuing advisory opinions. See, e.g., *United States v. American Library Association, Inc.*, 539 U.S. 194 (2003); *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990); *South Dakota v. Dole*, 483 U.S. 203 (1987); *King v. Smith*, 392 U.S. 309 (1968). Cf. *Gonzaga University v. Doe*, 536 U.S. 273 (2002).

Perhaps, when writing that "redressable injuries do not arise from voluntary choices", the district court meant that it would be possible for the school districts to comply with both statutes, and that the problems they may encounter from preferring one to the other are of their own making. A good deal of the district court's opinion is an elaboration on this theme. But that would be a deci-

sion on the merits, stemming from a conclusion that the two federal statutes are compatible in the sense that there is at least one way for school districts to satisfy both. A conclusion that a litigant's claim fails on the merits does not justify holding that the suit is nonjusticiable. Because the district court's bottom line is lack of standing, we read its opinion as not addressing the merits.

The district court gave a second reason for its conclusion that plaintiffs lack standing: the school districts have yet to suffer a concrete injury. The No Child Left Behind Act demands that school districts ensure pupils' "adequate yearly progress" (20 U.S.C. §6316) toward educational objectives, as measured by standardized tests that school districts must administer. The Individuals with Disabilities Education Act requires schools to adopt individual educational programs for pupils with disabilities. Plaintiffs say that adherence to these programs will cause the school districts to miss their targets under the No Child Left Behind Act, because federal regulations in place when the suit began provided that no district may exclude from the prescribed tests more than 1% of its pupils. 34 C.F.R. 200.13(c)(2). (An amendment effective May 9, 2007, excuses from any testing the 1% of pupils with the most serious disabilities and allows alternative tests for pupils with lesser disabilities, though this latter exception is capped at 2% of all students. These details do not matter for current purposes.) Defendants observe, however, that the two school districts that are the lead plaintiffs in this suit have met their targets so far, and they assert that speculation about future problems in continuing to achieve "adequate yearly progress" do not amount to a concrete injury.

That's true as far as it goes; fears about what the future may hold differ from the ongoing or imminent loss that the Supreme Court requires. Compare *Friends of the*

*Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), with *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). But seeing plaintiffs' injury as conjectural or contingent comes from thinking about how the districts may fare in meeting educational targets (or individual educational programs) as the only harm. Compliance with the No Child Left Behind Act is expensive; our colleagues in the sixth circuit recently held that a school district has standing because satisfying that statute may cost more than a district receives in federal grants. See *Pontiac School District v. Secretary of Education*, 2008 U.S. App. LEXIS 198 (6th Cir. Jan. 7, 2008). One source of expense is the need to administer multiple tests—not only those that the school districts believe best for their pupils, but also those that the national government requires under the No Child Left Behind Act.

Those costs may not be a large fraction of the school district's budget, but the constitutional requirement of standing differs from a minimum-amount-in-controversy requirement. Any identifiable injury will do. The requirement of standing "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (citations omitted). The school districts, at least, have a "direct stake in the outcome". They must pay for more tests than they would administer if left to their own devices, and this injury can be redressed by a declaratory judgment excusing the school districts from complying with the portions of the statute that they deem objectionable. Thus the school districts have standing, and we need not decide whether the parents also have standing.

A remand to address the merits is unnecessary, because plaintiffs' claim is too weak to justify continued litigation. Let us suppose, as plaintiffs assert, that the No Child Left Behind Act and the Individuals with Disabilities Education Act are irreconcilable in some respects. Then the earlier enactment, which is the Individuals with Disabilities Education Act, must give way. Plaintiffs' view that an earlier law can repeal a later one by implication has time traveling in the wrong direction.

The Individuals with Disabilities Education Act dates to 1970, when it was called the Education of the Handicapped Act; it has been renamed several times, most recently in 1990. The No Child Left Behind Act was sent to the President in 2001 and took effect in 2002. See 115 Stat. 1426. Although portions of the Individuals with Disabilities Education Act were amended in 2004 by Pub. L. 108–446, 118 Stat. 2647, and the whole Act was reauthorized in the process, none of the amendments supersedes any portion of the No Child Left Behind Act.

Those provisions with which the No Child Left Behind Act supposedly conflicts—requiring school districts to provide free appropriate public educations for all children, using individualized education programs where necessary—date from 1990 and before. Amendment of a statute does not make it a "new" law that supplants other statutes adopted between a statute's original enactment and its amendment, unless the change is incompatible with the intervening law. The black-letter rule is that reauthorization leaves legal norms alone; only alterations in statutory language matter. See *Pierce v. Underwood*, 487 U.S. 552, 566–67 (1988). Plaintiffs do not contend that any of the amendments made in 2004 supersedes any aspect of the No Child Left Behind Act that matters to this litigation. To the contrary, the 2004 amendments were designed in part to conform the Individuals with Disabilities Education Act to the 2001 Act, not to displace

it. Thus the asserted conflict is between legislation enacted in 2001 and a structure that was adopted in stages between 1970 and 1990, and the 2001 statute must prevail to the extent of any conflict.

This does not rule out the possibility that some state or federal regulations that purport to rely on the No Child Left Behind Act are not authorized by that law, and are disallowed by the Individuals with Disabilities Education Act. But plaintiffs' target is the 2001 law itself, and a federal court cannot forbid application of legislation enacted in 2001 just because it may undermine legislation enacted between 1970 and 1990.

The judgment of the district court is modified to dismiss the complaint for failure to state a claim on which relief may be granted and, as so modified, is affirmed.

A true Copy:

　　　　Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*