**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UTAH ANIMAL RIGHTS
COALITION, "UARC", a Utah non-
profit corporation; PETER TUCKER;
ROB HUTTON; AARON LEE;
CHRISTOPHER COFFIN; JACOB
EVANS; and ASHLEY RACKL,

        Plaintiffs - Appellants/
        Cross - Appellees,

    v.

SALT LAKE COUNTY, a body
corporate and politic of the State of
Utah,

        Defendant - Appellee/
        Cross - Appellant.

ART LOVATO and COREY
BULLOCK,

        Defendants-Appellees.

Nos. 07-4275 & 07-4287

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 2:07-CV-0070-DAK)**

---

Brian M. Barnard, Utah Civil Rights & Liberties Foundation, Inc., Salt Lake City, Utah, appearing for Appellants/Cross-Appellees.

David H.T. Wayment, Salt Lake County Deputy District Attorney, Salt Lake City, Utah, appearing for Appellees/Cross-Appellants.

Before **TACHA**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

**TACHA**, Circuit Judge.

The plaintiffs-appellants are Utah Animal Rights Coalition ("UARC") and five individuals interested in animal rights issues. They filed this 42 U.S.C. § 1983 claim for alleged violations of their First Amendment rights to free speech and to peaceably assemble after the individual plaintiffs attempted to protest a circus in South Jordan, Utah. The district court entered summary judgment against the plaintiffs. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

In 2004, plaintiff-appellant Peter Tucker conducted a small demonstration near Abravanel Hall in Salt Lake City. A Salt Lake County employee ordered him to stop. Mr. Tucker and UARC then sued Salt Lake County in federal court, challenging county ordinances that require an advance permit thirty days before conducting a public demonstration on county-owned property. *See* Salt Lake County Mun. Code §§ 14.56.040, 14.56.060. The district court granted partial summary judgment to the plaintiffs on their claim that the ordinances violated the First Amendment, and then the parties settled. As a result of that lawsuit, Salt Lake County attorneys instructed the sheriff's office that the ordinances are not

enforceable against small, spontaneous demonstrations.

On February 1, 2007, Mr. Tucker and the four other individual plaintiffs in this case engaged in the protest that is the subject of this lawsuit. Specifically, they demonstrated outside a circus at the Salt Lake County Equestrian Park ("Park"). The Park is owned by Salt Lake County but is located in the city of South Jordan; therefore, under Utah state law, South Jordan ordinances apply on Park property. *See* Utah Code Ann. § 17-50-304 ("A county may make and enforce within the limits of the county, *outside the limits of cities and towns*, all such local, police, building, and sanitary regulations as are not in conflict with general laws.") (emphasis added). Art Lovato and Corey Bullock are county employees responsible for Park operations. They do not have law enforcement authority.

After the individual plaintiffs had begun their protest, Mr. Bullock called the South Jordan police. South Jordan Police Officers Raab and Page arrived and told the protesters that they could not demonstrate at the Park because they did not have a permit, as required by South Jordan law, and that if they did not leave the Park they would be arrested. The protesters ended their demonstration and left. The details surrounding the circumstances of the incident are recounted later in this opinion.

One week later, the plaintiffs sued South Jordan City, Officer Page, and Officer Raab ("the South Jordan defendants"); and Salt Lake County, Mr. Lovato,

and Mr. Bullock ("the county defendants"). UARC sought declaratory and injunctive relief; the individual plaintiffs sought damages, in addition to declaratory and injunctive relief. Before the answer was due, the South Jordan defendants settled. They agreed to review the constitutionality of South Jordan's laws regarding free expression and demonstrations. *See* South Jordan Mun. Code §§ 12.12.00, 5.92.00. The South Jordan defendants also agreed to allow the plaintiffs to engage in small, spontaneous demonstrations in the city without giving advance notice or securing a permit. By stipulation of the parties, the court dismissed all claims against the South Jordan defendants.

After the South Jordan defendants had settled, the plaintiffs filed an amended complaint naming only the county defendants. They alleged that Mr. Lovato and Mr. Bullock violated their rights by enforcing the Salt Lake County ordinances that had previously been found to be unconstitutional as applied to small, impromptu demonstrations. In their answer, the county defendants denied that county ordinances apply to the Park, asserting that South Jordan ordinances govern. The county defendants admitted that Salt Lake County cannot require an advance permit for small, spontaneous demonstrations such as the plaintiffs' demonstration, but they denied that anybody tried to enforce the ordinances.

The county defendants moved for summary judgment. Of importance here, they argued that the conduct of the South Jordan defendants—not that of the county defendants—caused the deprivation of the plaintiffs' rights. The county

defendants noted that only South Jordan law applied to the Park, and that the plaintiffs' own complaint made it clear that no person ever mentioned Salt Lake County ordinances. The district court agreed with the county defendants, holding that "Plaintiffs have not affirmatively linked the Salt Lake County employees to any constitutional violation alleged in the Complaint." *Utah Animal Rights Coalition v. Salt Lake County*, 2007 WL 3046663, at \*1 (D. Utah Oct. 16, 2007). In the alternative, the court held that the county defendants did not act under color of law in calling the South Jordan police. *Id.* at \*1–2. The plaintiffs appeal.[1] The county defendants cross-appeal the district court's failure to award them costs and attorneys' fees.

## II. DISCUSSION

A.    Standing

---

[1]The plaintiffs also filed a motion for summary judgment, which the district court denied after granting the defendants' motion. In this appeal, the plaintiffs purport to contest both the entry of summary judgment against them and the denial of their motion for summary judgment. Unlike the grant of a motion for summary judgment, the denial of a motion for summary judgment is not a final order and is therefore usually not appealable. *See Weise v. Casper*, 507 F.3d 1260, 1269 (10th Cir. 2007). To the extent the grant of the defendants' motion for summary judgment makes the denial of the plaintiffs' motion appealable, our decision today affirming judgment for the defendants precludes us from giving the plaintiffs the relief they request.

We also note that the appendix only contains the plaintiffs' opposition to the defendants' motion for summary judgment. Although we have obtained the relevant pleadings, we remind the plaintiffs of their obligation to include in their appendix the county defendants' motion for summary judgment and the defendants' reply, and we further remind the plaintiffs that the failure to submit a complete appendix is grounds for summary affirmance. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 909–10 (10th Cir. 2009).

As an initial matter, the defendants question whether UARC and the individual plaintiffs have standing to seek an injunction enjoining them from prohibiting small, spontaneous demonstrations in the future. Because this issue goes to our jurisdiction, we must address it before proceeding to the merits. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc).

The Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. To establish a justiciable case or controversy, a plaintiff must demonstrate that he has "suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and that it is redressable by a favorable decision." *Walker*, 450 F.3d at 1087. The Supreme Court has defined "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations and citations omitted). Although a plaintiff is not required to subject himself to actual arrest as a result of exercising his First Amendment rights, it is equally well-established that "[a]llegations of possible future injury do not satisfy the injury in fact requirement." *Walker*, 450 F.3d at 1087 (quotations omitted). The party invoking federal jurisdiction—here, the plaintiffs—bears the burden to demonstrate standing. *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1100 (10th Cir. 2006).

1.    *UARC's Standing*

In support of UARC's claim for prospective relief, the first amended complaint alleges the following:

> UARC has in the past conducted public demonstrations, free speech activities and out reach actions with regard to animal rights issues in Utah.  UARC has done so on public streets and sidewalks and on government property open to the public in various cities in Utah.
>
> UARC . . . ha[s] conducted public protests, demonstrations, free speech activities and out reach actions on property belonging to Salt Lake County, including Abravanel Hall in downtown Salt Lake City.
>
> UARC . . . ha[s] conducted public protests, demonstrations, free speech activities and out reach actions on an impromptu or spontaneous basis.
>
> In 2004, UARC . . . brought suit in the United States District Court for the District of Utah against Salt Lake County and others challenging, *inter alia*, the County's ban, absent advance permits, on small spontaneous demonstrations on property belonging to Salt Lake County. . . . That ban had caused harm to UARC . . . .
>
> The County ordinances at issue in this action were at issue in the prior case.
>
> UARC . . . will be harmed by the enforcement of the County's continued ban on small spontaneous demonstrations on property belonging to Salt Lake County.

These allegations do not persuade us that UARC has standing to bring a claim for injunctive relief.  UARC has never identified its alleged injury, stating only the conclusion that it "will be harmed by the enforcement of the County's continued ban on small spontaneous demonstrations."  UARC does not claim that

it wants to demonstrate in the future.  Nor does UARC claim that a prohibition on speech regarding animal rights undermines its outreach or educational efforts. UARC simply states that it has been involved in prior litigation with Salt Lake County and that it has been involved in protests in the past.  Without a description of the harm UARC will suffer if individual protesters cannot hold small, spontaneous demonstrations, UARC has not met its burden to demonstrate an injury in fact.[2]  Therefore, UARC does not have standing to bring this claim.

2.    *Individual Plaintiffs' Standing*

In contrast to UARC, the individual plaintiffs have standing to seek an injunction.  Each of them has submitted affidavits demonstrating that they would like to be able to protest in the future and that they fear the defendants will not allow those protests.  For example, Mr. Tucker averred that:

> My right (and the right of other activists) to protest, to assemble and to engage in free speech were, are and will be greatly harmed and circumscribed by ordinances (like South Jordan City § 5.92.040 and § 12.12.020, and Salt Lake County §§ 14.56.010 et seq.) which require advance notice of or permits for all demonstrations regardless of size and advance planning . . . .
>
> I want to be able to participate in small spontaneous demonstrations in South Jordan City and at the Salt Lake County

---

[2]We note that UARC does not contend that it has associational standing. *See Bush*, 455 F.3d at 1099 (an association has standing to sue on behalf of its members only if "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'") (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977)).

Equestrian Park and Event Center without securing a permit and without having to provide advance notice to the City or the County.

. . . .

. . . I want court protection so that I can spontaneously participate in demonstrations on Salt Lake County property and in South Jordan, Utah without interference from the police and without securing a permit or giving advance notice.

. . . .

I am afraid that unless there is a court order the County employees will act to force me off the grounds of the Equestrian Park as occurred on February 1, 2007. I am afraid that unless there is a court order the South Jordan police will order me not to demonstrate in South Jordan unless I have a permit secured in advance, as occurred on February 1, 2007.

The other individual plaintiffs' affidavits contain similar averments. We conclude that these allegations are sufficient to demonstrate that the individual plaintiffs' future injury—not being able to conduct a spontaneous demonstration—is concrete and imminent, is fairly traceable to the action of the county defendants, and would be redressable by a favorable decision.[3]

---

[3]As we go on to explain, summary judgment was warranted in this case because the county defendants did not cause the individual plaintiffs to end their protest. This not to say, however, that the individual plaintiffs have failed to demonstrate, as part of the standing analysis, that their injury is traceable to the defendants and redressable by a decision directed toward those defendants. We have explained that "[f]or purposes of standing, we must assume the Plaintiffs' claim has legal validity." *Walker*, 450 F.3d at 1093. Otherwise, "every losing claim would be dismissed for want of standing." *Id.* at 1092. *See also Bd. of Educ. v. Spellings*, 517 F.3d 922, 924 (7th Cir. 2008) ("A conclusion that a litigant's claim fails on the merits does not justify holding that the suit is nonjusticiable.").

B.    Merits

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008).  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P.  56(c).  "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders*, 544 F.3d at 1105 (quotations omitted).

To prevail on a § 1983 claim, a plaintiff must demonstrate that he was deprived of his federal rights and that the deprivation was caused by a person acting under color of state law. *See Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005).  The district court granted the county defendants' motion for summary judgment for two reasons: (1) the district court concluded that the undisputed facts showed that the county defendants were not the cause of the plaintiffs' alleged rights deprivation; and (2) the court held that the county defendants had not acted under color of state law because they had simply called the police, which is something any private citizen can do.  We agree that the plaintiffs have failed to show the requisite causal link between the county defendants' conduct and the disbanding of the protest, and we therefore affirm on those grounds without reaching the color-of-law issue.

The record reveals the following facts.  A circus employee wanted the

-10-

protest to stop. He asked the county employees for assistance. Mr. Bullock

called the South Jordan police. He averred to the following facts, which are not

contested by any other record evidence:

> [I]ndividuals claiming to be with the Utah Animal Rights Coalition staged a demonstration at the [Park].
>
> The proprietor of the circus approached me and requested that the protesters be evicted. Because the [Park] is located within the incorporated city limits of South Jordan, I called South Jordan City to determine what the legal requirements were, if any, for holding a protest.
>
> Eventually, South Jordan Police arrived and informed the protesters that they would need a permit to protest within South Jordan.
>
> I was unaware of any county ordinance bearing on this issue one way or another.
>
> I did not know what legal requirements, if any, there were for protesting under these circumstances and simply deferred to the South Jordan officers.

The plaintiffs video-recorded the encounter with the South Jordan police

officers. Our review of the video, which is quite instructional, shows that South

Jordan Police Officer Raab told the plaintiffs that they were in South Jordan, not

an unincorporated part of Salt Lake County, and that a South Jordan ordinance

required them to have a permit. One of the protesters told the police that they did

not need a permit for impromptu protests. When the officer disagreed, the

protester asked for documentation of the applicable law. Officer Raab told him

he could find the ordinance on South Jordan's website. The protester asked for

-11-

the specific ordinance so he could speak to his lawyer. Officer Raab told him he did not have it and again directed the protester to South Jordan's website. The protester responded that he did not have a computer with him.

At this point, Mr. Bullock told a protester, "if you don't put the sign down I'm going to trespass you off the property." The plaintiffs, however, did not leave. One of the protesters then asked for and received Officer Raab's badge number. The county employees spoke with the police officers, asking whether the protesters needed a permit. An officer replied that he had talked it over with his lieutenant, and that a person must have a permit to protest anywhere in South Jordan. A protester asked whether they were on city or county property. The police officer explained that the county owned the property, but that it was under the jurisdiction of South Jordan. The officer offered an example, explaining that even though the county owned the Park, Park vendors had to abide by South Jordan's liquor licensing requirements.

The protester was not satisfied with this answer and spoke with Mr. Bullock and/or Mr. Lovato.[4] They repeatedly stated that they did not know what the rules were regarding protests, but that South Jordan law applied to the Park. One of the protesters explained that they had the same issue with county-owned property at Abravanel Hall, and that they had won a prior lawsuit giving them the right to hold small, impromptu protests on county-owned property. One of the

_____

[4]It is unclear from the recording which man is speaking at any given time.

county employees again stated that he was not familiar with the rules, which was the reason he called the South Jordan police and the reason he had to "go with what these gentlemen [the police officers] say tonight."

Officer Raab then told the protesters that they were "done for the night" but could get a permit for the next day. A protester asked what would happen if they stayed. Officer Raab told them they would be arrested. Another man (apparently Mr. Lovato or Mr. Bullock) said, "all right, that's what the officer says, so I guess we have to go with it." The protesters put their signs away and left.

Based on the undisputed evidence and the plaintiffs' theory of the case, as articulated in their amended complaint, it is clear that the plaintiffs' protest was curtailed only upon the arrest threats given by South Jordan police officers, not upon any action by Mr. Lovato or Mr. Bullock. The complaint unequivocally states that "[b]ased on the threats of Officer Raab and Officer Page, [the individual plaintiffs] ceased their demonstration, left the county property and went home." This allegation is borne out by the plaintiffs' video of the encounter, which shows them refusing to stop their protest and disagreeing with Mr. Lovato and/or Mr. Bullock about the law until Officer Raab tells them they will be arrested if they continue their demonstration. The plaintiffs' affidavits also show that they ended their protest only after the police warnings. All five of their affidavits use the exact same language: "*Based on the threats of Officer Raab and Officer Page*, I and the other four (4) activists ceased our demonstration

-13-

and went home." (Emphasis added).

The plaintiffs also argue that Mr. Lovato and Mr. Bullock ordered them to leave the Park before calling the police. However, there is no causal link between this statement and the end of the plaintiffs' protest. In fact, the plaintiffs admit that this instruction had no effect. According to Mr. Coffin's affidavit, Mr. Hutton replied that the group "had a First Amendment right to be there and that it was fine if he called the police." Thus, any instruction to leave by Mr. Lovato or Mr. Bullock did not silence the protesters.

To the extent the plaintiffs argue that Mr. Bullock's statement "if you don't put the sign down I'm going to trespass you off the property" constituted a threat that they would be arrested if they did not stop the demonstration, the record reveals that the plaintiffs also were likewise undeterred by that comment. Mr. Bullock made the statement approximately one minute into the five-minute long video of the encounter with the police. The plaintiffs did not leave or stop protesting after hearing the comment. Instead, they engaged both the police officers and the county employees in a lengthy discussion regarding their rights, which terminated only when the police told them they would be arrested if they did not stop the protest. As we previously explained, the plaintiffs have maintained throughout this lawsuit that "*[b]ased on the threats of Officer Raab and Officer Page*, [the plaintiffs] ceased their demonstration, left the county property and went home." (Emphasis added).

-14-

For the first time on appeal, the plaintiffs highlight our statement in *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990), that "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* at 700. The plaintiffs suggest that Mr. Lovato and Mr. Bullock called the police believing that the police would force the plaintiffs to stop protesting. The plaintiffs did not make this causal chain argument below, and we generally do not consider new theories on appeal—even those that fall under the same general category as one that was presented in the district court. *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798–99 (10th Cir. 1996). Thus, we will not consider this argument on appeal. We further note that this line of reasoning is contradicted by the plaintiffs' brief, which states, "[t]his lawsuit was not filed because Lovato and Bullock called the police. Suit was filed because Lovato and Bullock silenced the protesters."

Finally, the plaintiffs repeatedly contended in their opposition to summary judgment that the Salt Lake County permit ordinances are unconstitutional as applied to small, spontaneous protests at the Park. Protests at the Park, however, are not subject to Salt Lake County ordinances. Rather, because the Park is within the South Jordan city limits, South Jordan laws apply. *See* Utah Code Ann. § 17-50-304. Thus, Salt Lake County ordinances have no relevance to this

case, with respect to the causation issue or otherwise.[5]

Accordingly, the district court correctly determined that Mr. Lovato and Mr. Bullock are entitled to judgment as a matter of law.  The undisputed facts demonstrate that the actions of those defendants did not infringe on the individual plaintiffs' right to free speech or to peacefully assemble; rather, the protest was disbanded upon the arrest threats of South Jordan Police Officers Page and Raab. Further, because Mr. Lovato and Mr. Bullock did not violate the individual plaintiffs' rights, and because no Salt Lake County ordinance or policy is at issue here, the district court properly determined that no liability lies against Salt Lake County.  For the same reasons, the claims for injunctive and declaratory relief also fail.

C.    Fees

The county defendants sought fees and costs in their motion for summary judgment.  "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1); *see also Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) ("Rule 54(d) creates a

---

[5]The plaintiffs simultaneously appear to recognize the inapplicability of Salt Lake County ordinances on Park property, stating in their opposition to summary judgment that "[i]t is of no moment, whether the individual defendants were acting pursuant to the challenged ordinance and policy, contrary to the challenged ordinance and policy, without knowledge of the challenged ordinance and policy; or independently, on a lark or perhaps even beyond the scope of their employment."

presumption that the prevailing party shall recover costs."). Although the denial of costs is reviewed for abuse of discretion, we have explained that the court "must provide a valid reason for not awarding costs to a prevailing party" under Rule 54. *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 459 (10th Cir. 1995). "Unless an appellate court knows why a trial court refused to award costs to the prevailing party, it has no real basis upon which to judge whether the trial court acted within the proper confines of its discretion." *Serna v. Manzano*, 616 F.2d 1165, 1168 (10th Cir. 1980).

A court may order attorney's fees in a § 1983 claim to a prevailing party other than the United States. 42 U.S.C. § 1988(b). "While a prevailing plaintiff ordinarily is entitled to attorney fees, a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1203 (10th Cir. 2000) (quotations and citations omitted). This is a high bar for a prevailing defendant to meet. *Id.*

In the order granting summary judgment to the county defendants, the district court ordered each party to bear his own fees and costs without explanation. The court then ordered the case closed. *Utah Animal Rights*, 2007 WL 3046663, at *2. The county defendants cross-appeal the denial of fees and costs, contending that the district court abused its discretion because it denied fees and costs without first allowing them to present argument on the issue and

-17-

because it did not provide reasons for the denial.  We agree, as do the plaintiffs.[6]

We thus remand to the district court with directions to provide the county

defendants with an opportunity to submit a bill of costs and a motion for § 1988

attorneys' fees.  If the court is still inclined to deny fees and/or costs, it shall state

its reasons for that decision on the record.  *See Serna*, 616 F.2d at 1168

(remanding with the same directions regarding costs).

### III.  CONCLUSION

The part of the judgment ordering the parties to bear their own fees and

costs is REVERSED and REMANDED to the district court for further

proceedings consistent with the instructions set forth above.  The judgment is

otherwise AFFIRMED.

---

[6]In their reply brief, the plaintiffs acknowledge that, if we uphold summary judgment for the defendants, the case should be remanded for a determination of costs and attorneys' fees.