FILED
United States Court of Appeals
Tenth Circuit

April 4, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TODD ELLISON,

     Plaintiff - Appellant,

v.

CHRISTINE M. T. LADNER,

     Defendant - Appellee.

No. 18-3080
(D.C. No. 5:17-CV-04025-DDC-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Todd Ellison spent nearly five years—1,705 days—in the Sedgwick County

Adult Detention Facility awaiting trial on the state's civil petition to involuntarily

commit him under the Kansas Sexually Violent Predator Act. The state district court

eventually concluded that the extraordinary delay violated Ellison's due process

rights and ordered him released. The Kansas Supreme Court affirmed. Ellison then

filed this suit for damages in federal court alleging that the lengthy detention violated

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

his rights under the United States Constitution. The district court concluded that the only defendant Ellison had sued was entitled to absolute prosecutorial immunity or, alternatively, to qualified immunity, and dismissed the case. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background[1]

The Kansas Sexually Violent Predator Act (KSVPA) authorizes the state of Kansas to commit an individual in a civil proceeding if the state proves beyond a reasonable doubt that he is a sexually violent predator. Kan. Stat. Ann. § 59-29a07(a) (2005 & 2008 Supp.).[2] When the state files a petition for civil commitment under the KSVPA, a state court must determine whether the state has shown probable cause that the individual is a sexually violent predator. *Id.* § 59-29a05(a). If the court finds probable cause, it must order the individual detained. *Id.* The accused individual is entitled to a jury trial, and the trial must be held within 60 days after the probable cause hearing. *Id.* § 59-29a06(a), (c). But "[t]he trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the [individual] will not be substantially prejudiced." *Id.* § 59-29a06(a).

---

[1] The facts are drawn from the allegations in Ellison's complaint, which must be taken as true when considering a motion to dismiss. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).

[2] We cite the version of the statute in effect in 2009 when Ellison was detained. The statute has since been amended several times, but those amendments are not relevant to our analysis.

Ellison served a term of imprisonment in the custody of the Kansas Department of Corrections for committing a sex crime. Before his release, and based on certification by the Kansas DOC that Ellison met the statutory criteria, the state filed a petition against him under the KSVPA. On June 25, 2009, a state court judge found probable cause that Ellison was a sexually violent predator and ordered him detained in the county jail pending further proceedings.

Ellison's trial was set for September 21, 2009. A combination of multiple continuances, changes in Ellison's counsel, and reassignment to three different state-court judges resulted in a lengthy delay. On June 21, 2012, Ellison filed several motions advocating for his immediate release, including a motion arguing that the KSVPA violated due process. On June 7, 2014, the state-court judge concluded that the delay had violated Ellison's due process rights, dismissed the case, and ordered him released. The Kansas Supreme Court affirmed, and in doing so decided for the first time in Kansas that the Sixth Amendment speedy-trial factors applying in criminal prosecutions supplied the appropriate framework for assessing delay in a civil-commitment proceeding. *In re Ellison*, 385 P.3d 15, 22-25 (Kan. 2016). Ellison spent 1,705 days, more than 56 months, in state custody without a trial on the state's KSVPA petition.

Ellison filed suit in federal court under 42 U.S.C. § 1983 against Christine Ladner, the Assistant Attorney General for the State of Kansas assigned to civil-commitment actions under the KSVPA during the time Ellison was in custody. He

3

alleged that she had violated his constitutional rights by detaining him for 56 months without trial and by not taking any action to advance his case.

Ladner moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5) and (6).[3] She argued that the complaint failed to state a claim and that she was entitled to absolute prosecutorial immunity and qualified immunity. The district court concluded that Ladner was entitled to absolute prosecutorial immunity or, in the alternative, qualified immunity. The court did not decide whether the allegations in the complaint stated a claim for a constitutional violation. Ellison appeals both immunity determinations.

## Discussion

We review the district court's immunity determinations de novo. *Snell v. Tunnell*, 920 F.2d 673, 675 (10th Cir. 1990). Because we are reviewing an order granting a motion to dismiss under Rule 12(b)(6), we accept as true all well-pleaded allegations in the complaint and construe them in favor of Ellison. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).

### Absolute Immunity

"State attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings are absolutely immune from suit under section 1983 concerning

---

[3] Ladner styled her motion as arising under Rule 12(b)(1), (2), (5), and (6), but the district court read the motion as presenting arguments only under Rule 12(b)(5) and (6), and neither side has objected to this characterization on appeal.

4

activities intimately associated with the judicial process." *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (internal quotation marks and alterations omitted). A prosecutor is immune from suit for "actions that cast [her] in the role of an advocate initiating and presenting the government's case." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007). Prosecutorial immunity does not extend to actions that are primarily investigative or administrative in nature. *Id.* at 1262. Among the factors a court should consider in determining whether an action falls on the advocacy—and immune—side of the spectrum are "(1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." *Id.* at 1261 (citations omitted).

In his complaint, Ellison alleges that Ladner violated his constitutional rights by "taking no action to further advance the case against [him] for approximately fifty-six months" and by "detaining him . . . for that time without reasonable explanation of the delay and based solely on an unverified petition." Aplt. App. at 9. But he also alleges that the lengthy delay was caused by "a combination of multiple continuances, [his] obtaining new counsel and three different district [j]udges handling the case." *Id.* at 6. Notably, Ellison does not allege that Ladner is responsible for any of those circumstances.

Noting the state-court judge, not Ladner, ordered Ellison detained, the district court construed the complaint as alleging that Ladner had violated Ellison's constitutional rights by not filing a motion for his release. The court concluded that

5

the decision to file such a motion required legal knowledge and the exercise of discretion that are part of a prosecutor's role in presenting the government's case. The court also concluded that any actions by Ladner that contributed to the delay in bringing Ellison to trial—either by agreeing to Ellison's requests for continuance, by acquiescing in the state court's continuances, or by requesting continuances herself— also required legal knowledge and the exercise of discretion.

We agree with the district court. The state court's decisions to continue Ellison's trial were "unquestionably a judicial act." *Mink*, 482 F.3d at 1259-60 (internal quotation marks omitted). So Ladner's role in agreeing to, requesting, or acquiescing in those continuances involved an exercise of professional judgment associated with the judicial process. *Id.* at 1261. We also agree with the district court that any decision by Ladner not to seek Ellison's release required an exercise of professional judgment.[4]

On appeal, Ellison argues that Ladner's failure to diligently pursue the matter was a failure to discharge her obligations that should be treated as an administrative failure, not advocacy. But the suggestion that Ladner did nothing for 56 months is belied by the allegation in Ellison's complaint that the delay was caused by "a combination of multiple continuances" and other circumstances not within Ladner's control—Ellison's requests for counsel and reassignment to different judges. Aplt.

---

[4] In any event, on appeal, Ellison disagrees with the district court's construction of his complaint and insists he "does not allege that Ladner was required to seek his release." Aplt. Opening Br. at 15.

6

App. at 6.  At a minimum, Ladner must have agreed to, requested, or not opposed those continuances.  That is not inaction, and, as described above, such actions are advocative, not administrative.

**Qualified Immunity**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When resolving a motion to dismiss based on qualified immunity, a court must consider (1) whether the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  We may resolve these questions in any order, and a defendant is entitled to qualified immunity if a plaintiff fails to satisfy either requirement.  *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016).  To show a clearly established right in this circuit, a plaintiff must identify a Supreme Court or Tenth Circuit decision on point, or at least show a "clearly established weight of authority from other courts."  *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

The district court did not decide whether Ellison had pleaded sufficient facts to state a claim or, relatedly, whether Ellison had alleged conduct that violated a constitutional right. Instead, it concluded that even assuming the alleged conduct did violate a constitutional right, the right was not clearly established.  We agree that

7

Ladner is entitled to qualified immunity, in part for different reasons than the district court. To explain why, we find it helpful to first identify the constitutional rights potentially at issue in this case. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017) (noting that the threshold inquiry in a § 1983 suit is to "'identify the specific constitutional right' at issue" (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994))).

The complaint Ellison filed in the district court includes somewhat muddled references to the Fourth Amendment's protections against unreasonable seizure and the Fourteenth Amendment's due process protections. The complaint contains a single claim entitled, "Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988 Unreasonable Seizure in Violation of Fourth and Fourteenth Amendments." Aplt. App. at 9. Under this heading, Ellison alleges that Ladner violated his "Fourth Amendment right to be free from unreasonable seizure." *Id.* But elsewhere in the complaint, he alleges that Ladner was aware that jails are not to be used for detention pending civil commitment proceedings as doing so "violates the person's *substantive and procedural due process rights*," yet she "made the decision to continue to detain [him] in jail without a finding as to his guilt . . . , thereby punishing him and violating his *due process rights* for approximately fifty-six months." *Id.* at 8 (emphasis added). It appears the district court read the complaint as asserting violations of both the Fourth and Fourteenth Amendments. *Compare* Aplt. App. at 114 ("Here, plaintiff claims that qualified immunity cannot protect defendant because plaintiff had a clearly established right to be free from unreasonable seizures."), *with id.* at 115 ("Importantly, the Kansas Supreme Court [in *In re Ellison*] cited no

8

existing case law from the Supreme Court or the Tenth Circuit that directly answered whether Kansas had deprived plaintiff of due process by proceeding so slowly in a civil commitment proceeding, or keeping him detained while doing so. . . . Neither does plaintiff now.").

Ellison certainly argues on appeal that his prolonged detention violated both the Fourth[5] and Fourteenth Amendments. Aplt. Opening Br. at 22-25. For her part, Ladner insists that Ellison has not alleged a Fourteenth Amendment due process claim in his complaint or in the district court. Aplee. Br. at 35-36. But based on the complaint's referring to violations of Ellison's due process rights, and on the language in the district court's order, we will construe the complaint as alleging a procedural-due-process violation in addition to an unreasonable seizure.[6] Even so, Ladner is entitled to qualified immunity on both claims.

The Fourth Amendment protects the people from unreasonable seizures, those unsupported by probable cause. *Manuel*, 137 S. Ct. at 918-19. Here, the state court

---

[5] Ellison references malicious-prosecution case law as the starting point for a Fourth Amendment analysis. *See* Aplt. Opening Br. at 23, 28. But Ellison did not raise a malicious-prosecution claim below. To the extent he attempts to raise such a claim now, we will not consider legal theories raised for the first time on appeal. *Utah Animal Rights Coal. v. Salt Lake Cty.*, 566 F.3d 1236, 1244 (10th Cir. 2009).

[6] We do not construe the complaint to allege a substantive-due-process claim, because it contains no allegations that the conditions (as opposed to the duration) of Ellison's pretrial detention amounted to punishment, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that the proper substantive-due-process inquiry is whether the conditions of pretrial detention amount to punishment of the detainee), and the district court did not address a substantive-due-process claim. Accordingly, we do not consider the substantive-due-process arguments Ellison raises for the first time on appeal. *Utah Animal Rights Coal.*, 566 F.3d at 1244.

found probable cause that Ellison was a sexually violent predator and ordered Ellison detained. In his complaint, Ellison does not allege that he was detained without probable cause or that the legal process underlying the probable cause determination was defective. On appeal, he concedes that his initial detention was "most likely reasonable, as it was based upon a finding of probable cause," but he asserts "it was at some time during the next 56 months that the seizure became unreasonable." Aplt. Opening Br. at 24. In other words, Ellison does not challenge the probable cause determination; rather, he contends that the probable cause did not justify his lengthy detention. For plaintiffs not challenging the probable cause determination itself, but instead only the confinement after a determination of probable cause, "the protections offered by the Fourth Amendment do not apply." *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (brackets and internal quotation marks omitted). Thus, while the district court concluded Ellison's Fourth Amendment right was not clearly established, we conclude Ladner is entitled to qualified immunity on Ellison's Fourth Amendment claim because his allegations do not make out a Fourth Amendment violation.

The Fourteenth Amendment's Due Process Clause protects individuals from governmental deprivations of liberty "without due process of law." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). As a matter of procedure, due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). The Kansas Supreme Court concluded, as a matter of first impression in Kansas, that

10

the lengthy delay in bringing Ellison to trial in the civil-commitment proceeding violated his procedural-due-process rights. In reaching this decision, the Kansas Supreme Court did not identify a single Supreme Court or Tenth Circuit case finding a procedural due process violation in the civil-commitment context, and the cases it did identify—from two states and the Ninth Circuit—do not clearly establish the due process violation Ellison asserts. *See In re Ellison*, 385 P.3d at 22-25.

On appeal, Ellison admits he cannot point to a Supreme Court or Tenth Circuit case where a state attorney denied due process to a KSVPA detainee, but he argues that he need show only that his right to the KSVPA's procedural protections was clearly established. Ellison misunderstands the particularity with which the right must be established.[7] *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (reiterating that "clearly established law must be particularized to the facts of the case" (internal quotation marks omitted)). He must identify a case where a government official acting under similar circumstances was held to have violated the Fourteenth Amendment. *See id.* In other words, Ellison must identify a Tenth Circuit or Supreme Court case in which a state attorney in a civil commitment

---

[7] We read Ellison's complaint as alleging that Ladner violated due process by depriving him of a liberty interest arising from the Fourteenth Amendment (the liberty interest identified by the Kansas Supreme Court) as opposed to a liberty interest created by the KSVPA. *See Cordova v. City of Albuquerque*, 816 F.3d 645, 656-57 (10th Cir. 2016) (explaining that "[l]iberty interests can either arise from the Constitution or be created by state law"). To the extent he now argues that the KSVPA created a liberty interest that Ladner violated by not complying with its procedural requirements, we decline to consider this theory for the first time on appeal. *Utah Animal Rights Coal.*, 566 F.3d at 1244.

11

proceeding was held to have violated procedural due process for her role in prolonged detention without trial after a probable cause determination. He has, admittedly, not done this.[8]

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[8] The Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997), does not supply clearly established law for Ellison's due-process claim. In that case, the Supreme Court considered a challenge to the constitutionality of the KSVPA and determined that the procedures and evidentiary standards set forth in the statute satisfied substantive-due-process requirements such that the statute was constitutional. *Id.* at 356-60, 371. The Court did not consider a procedural-due-process claim or hold that any particular government conduct had violated procedural-due-process by resulting in a lengthy detention.

12